**HINES, Director General of Railroads, v. PENNINGTON.  (No. 6731.)**

(Court of Civil Appeals of Texas. San Antonio. April 19, 1922. Rehearing Denied May 10, 1922.)

1. Railroads ⬅➡443(7)—Recovery for loss of animals on theory of discovered peril held not supported by evidence.

In an action for the death of mules struck by a heavy train carrying live stock, undisputed testimony of the engineer, that it was impossible, after discovering the animals 100 feet ahead, to stop or slacken the speed of the train, having regard for its safety, with the means at hand, in time to avoid the accident, *held* not to support recovery on the theory of discovered peril.

2. Railroads ⬅➡419(4)—Doctrine of discovered peril stated.

To recover for injury to animals, under the doctrine of discovered peril, the owner must show that the trainmen discovered the animals in time, by the means at hand, to stop or slacken the speed of the train, with due regard to its safety and that failure to do so was negligence proximately causing the accident.

3. Evidence ⬅➡20(2) — Common knowledge that sudden application of emergency brakes to train loaded with live stock will upset and injure them.

It should be a matter of common knowledge that a sudden and unusual application of emergency brakes to a train loaded with live stock will upset and throw them off their balance to their injury in varying degrees.

4. Evidence ⬅➡594—Court cannot disregard uncontroverted testimony of sole eyewitness.

In an action for death of mules struck by a train, the court could not disregard the uncontroverted testimony of the engineer, who was the sole eyewitness, as to the impossibility of stopping or slackening the speed of the train, after discovering the animals' peril, in time to avoid the accident.

Appeal from Williamson County Court; F. D. Love, Judge.

Action by C. A. Pennington against W. D. Hines, Director General of Railroads. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

S. W. Fisher and G. B. Smedley, both of Austin, and Dabney & King, of Houston, for appellant.

Cooper Sansom, of Georgetown, for appellee.

SMITH, J. Two mules belonging to appellee were killed by being struck by a freight train on the International & Great Northern Railroad, at the time under government control and operated by appellant, Hines, as Director General. The engineer of the train was the only eyewitness to the accident who testified, and by him it was shown that the accident occurred just before daylight, when his train, a heavy train consisting of 40 carloads of cattle, was running down a slight grade at from 15 to 20 miles an hour. He first saw the mules when they started across the track 100 feet ahead of the approaching train. He sounded the alarm whistle, and called to his fireman to "look out," and by that time the engine was upon the mules. He did not reverse his engine, or otherwise endeavor to stop or slow up the train for the reason, stated by him, that he did not have time to do so, with the means at hand, in the interval between discovering and striking the mules, which counsel have kindly calculated to be between 5 and 10 seconds; that with the heavy train going at that rate of speed down that grade, and having regard for

the safety of the train and its contents, he could not have stopped it with the means at hand under 600 yards. Upon this testimony, the trial court, without the intervention of a jury rendered judgment in favor of the owner of the mules, and against the Director General, for $550, shown to have been the value of the mules.

The right of way was fenced at the place of the accident, the stock law was in force in that vicinity, and the court properly found that the train operatives were under no duty to keep a lookout for these animals. The court rendered judgment against the Director General alone upon the theory of discovered peril, his finding of liability on that account being based alone upon the testimony of the engineer, which we have set out above. Appellee testified that the tracks of the mules showed that they went on the railroad dump at a certain point; that they walked leisurely along the dump westwardly until they came to a bridge, whereat they suddenly turned and precipitately fled eastward 120 feet to the point of the collision. As we understand it, none of this testimony bears on the question of discovered peril. None of it conflicts with or strengthens any part of the engineer's testimony upon that phase of the case.

[1-3] The testimony of the engineer does not, in our opinion, support the theory of discovered peril. According to that testimony, it was impossible, after discovering the animals, to stop or slacken the speed of the train, having regard for its safety, with the means at hand, in time to avoid the accident. When we consider the heavy train, the rate of speed at which it was moving, the character of the freight it was carrying, the down grade, and the distance between the train and the animals when first discovered, the physical facts thus presented seem to us to reject every element of the doctrine of discovered peril. To support a judgment upon that doctrine it was necessary for the owner of the mules killed to affirmatively show that the train operatives actually discovered the animals and their peril in time to enable the operatives, by the use of the means at hand, to stop or slacken the speed of the train and by that means avoid the accident, and that the failure to use such means to that end was negligence proximately causing the accident. And these means for slowing up the train must be used with due regard to the safety of the train and its contents. Here the train was carrying 40 carloads of cattle to market. It is a matter that ought now to be of common knowledge that a sudden and unusual application of emergency brakes to a train loaded with live stock will upset such stock, and throw them off their balance, to their injury in varying degrees. In this case, with the heavy train moving down grade at 15 or 20 miles an hour, with the imperiled mules only 100 feet ahead, with only a few seconds in which to get results, it would have been poor judgment for the engineer to apply his emergency brakes, even if by doing so he could hope to avoid collision with the mules, which it seems would have been a physical impossibility. Confronted with the alternative presented to him, his first duty was to the thousand or more cattle on his train, beside which the peril of the two mules was of slight consequence. Those conjectures are immaterial, however, because of the undisputed testimony of the engineer that it was impossible, with the time and means at hand, to have stopped or slackened the speed of the train in time to avoid the accident.

[4] The court could not entirely disregard the testimony of the engineer, which was in no way controverted. If his testimony was given any weight, the court was bound to find against appellee; disregarding it, there was no testimony whatever upon which to base the judgment. As nothing can be accomplished by remanding the cause, the judgment of the court below will be reversed, and judgment here rendered for appellant.

Reversed and rendered.